```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS
```

UNITED STATES OF AMERICA    )
                            )
                            )
                 v.         )         09-cr-30014-MAP
                            )
GARY GAUDETTE,              )
          Defendant         )


### MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO SUPPRESS
### (Dkt. No. 39)

January 3, 2011

**PONSOR, D.J.**

### I. INTRODUCTION

On June 16, 2009, Defendant Gary Gaudette was charged with possession with intent to distribute marijuana. After various pretrial proceedings, Defendant now moves to suppress inculpatory statements made and evidence seized following a search of his property on March 3, 2009. (Dkt. No. 39.)

Defendant argues that (1) the affidavit in support of the application for a search warrant failed to establish the requisite level of probable cause; (2) the affidavit

contained false and misleading statements and, as such, requires a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978); (3) Cheryl Balkus, an electric company employee, acted as a government agent when she conducted a warrantless search of Defendant's property; and (4) Defendant did not voluntarily waive his Miranda rights before speaking to law enforcement agents. For the reasons discussed below, this court holds that the affidavit established the requisite level of probable cause, the affidavit does not contain false or misleading statements sufficient to justify a Franks hearing, and an evidentiary hearing is necessary to adjudicate the two remaining issues.

## II. FACTUAL BACKGROUND

On January 14, 2009, a confidential informant telephoned the Belchertown Police Department and informed Officer Steven Henn about an ongoing drug operation in Belchertown. The informant specified one James Trumble, of 43 Continental Street in Springfield, as a prominent participant in the criminal conduct. The informant stated that Trumble routinely drove from Springfield to 455 Mill Valley Road in Belchertown, where he obtained large amounts

of marijuana from an individual named Gary Gaudette, who resided there.  The informant told Officer Henn that he or she had personally observed "pillow cases" of marijuana in Trumble's possession in the Springfield area at some unstated time in the past.  The informant added that Defendant Gaudette lived in the Mill Valley Road home with his girlfriend and grew the marijuana indoors on the property.  The informant stated that the grow consisted of hundreds of plants and that Gaudette was making a large amount of money from this enterprise as evidenced by his having "recently purchased" three Toyota automobiles.  A check of Gaudette's electrical data, the informant claimed, would reveal unusually high usage, due to the power demands created by the marijuana grow.

    The informant provided a name, address, and telephone number to Officer Henn, but requested anonymity in any documents created in connection with the investigation.  Thus, the informant's name was not provided in the affidavit supporting the warrant application.  Indeed, no member of law enforcement ever met the informant face-to-face prior to the submission of the application for the search.  State

police did confirm through telephone records that the address and telephone number provided by the informant matched up, but the affidavit does not indicate whether an effort was made to confirm the name given or to trace the call back to that address.

On January 21, 2009, the informant again called Officer Henn to report that Trumble was currently traveling from Springfield to Gaudette's address at 455 Mill Valley Road in Belchertown to pick up a large amount of marijuana. The informant also stated that Defendant Gaudette allowed Trumble to operate a green 2003 BMW "5 series" with a Massachusetts license plate, number 477BXO, registered in the name of Gaudette or his girlfriend. The informant claimed that Trumble was currently operating this vehicle.

About an hour after receiving this call, Officer Henn observed a vehicle matching the informant's description parked in the driveway of 455 Mill Valley Road. State police later observed this same motor vehicle at a Springfield address, where Trumble was seen speaking to two females at the front door of a multi-family unit.

On February 17, 2009, Officer Henn enlisted Sergeant

Christopher Wilcox of the Massachusetts State Police to assist him with the investigation.  Sergeant Wilcox contacted the Registry of Motor Vehicles ("RMV") and confirmed that a 2009 Toyota Camry, a 2008 Toyota Tundra, and a 2009 Toyota Sienna were registered to Gary Gaudette.  Additionally, on February 19, Sergeant Wilcox caused Cheryl Balkus, an employee of the utility company supplying electricity to the Mill Valley Road address, to enter the property to check the electric meter.  Balkus reported that the Anti-theft Tag was missing from the meter and that the Encoder Receiver Transmitter was recording greater use of electricity than the meter itself showed, making it evident to Balkus that someone had tampered with it.  Sergeant Wilcox obtained electric billing and usage records for 455, 449, and 459 Mill Valley Road.  According to Drug Enforcement Administration ("DEA") agents, a comparison of electricity usage between Gaudette's 455 address and his neighbors' residences provided evidence of elevated usage at 455 consistent with a marijuana grow.

On March 3, 2009, Sergeant Wilcox completed an affidavit detailing the foregoing information, and, later

that day, was granted a search warrant for 455 Mill Valley Road, Belchertown, Massachusetts. State police executed the search warrant the following day, seizing 248 marijuana plants as well as extensive property used for the production and distribution of marijuana. The officers also arrested James Trumble and Defendant, who made inculpatory statements at the time of his arrest.

### III. DISCUSSION

Defendant now moves to suppress the evidence seized and the inculpatory statements made at the time of his arrest.

A. Probable Cause.

Probable cause to conduct a search exists if "the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696 (1996). A warrant application must demonstrate probable cause to believe that "(1) a crime has been committed (the 'commission' element), and (2) enumerated evidence of the offense will be found at the place to be searched (the 'nexus' element)." United States v. Strother, 318 F.3d 64, 67 (1st Cir. 2003).

To determine the sufficiency of an affidavit supporting a search warrant, the court must consider "whether the totality of the circumstances stated in the affidavit demonstrates probable cause to search the premises." Id. (citation and quotation marks omitted). An informant's "veracity, reliability, and basis of knowledge" are "highly relevant" to this determination. Alabama v. White, 496 U.S. 325 (1990) (quoting Illinois v. Gates, 462 U.S. 213, 230 (1983)). The court must examine the affidavit "in a practical, common-sense fashion" and must "accord considerable deference to reasonable inferences the [issuing judicial officer] may have drawn from the attested facts." Strother, 318 F.3d at 67 (citations and quotation marks omitted).

Here, Defendant argues that the affidavit lacked probable cause because it contained uncorroborated statements by what counsel terms an "anonymous tipster." Given that "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," White, 496 U.S. at 329, Defendant contends that the search warrant, which relied heavily on reports by the informant, lacked probable

cause.

This argument fails because it rests on a flawed premise; the informant was not an anonymous tipster. As noted, Sergeant Wilcox's affidavit reports that Officer Henn "spoke to an individual who telephoned the Belchertown Police Department to provide information regarding a large scale indoor marijuana growing operation that is being conducted at a residence located at 455 Mill Valley Road in Belchertown, MA." (Dkt. No. 41, Ex. A, Wilcox Aff. at ¶ 3.) It continues:

> For reasons of his/her personal safety, this individual did not want to be identified in any police reports or affidavits. However, <u>this individual did provide the Belchertown Police Department with his/her full name, address and telephone number</u>. This officer [Sergeant Wilcox] has since contacted the telephone company and confirmed that the telephone number provided by this individual matched the address the individual reported he/she resided at.

(<u>Id.</u> (emphasis added).) The fact that Sergeant Wilcox excluded the informant's name and contact information from the affidavit may be a cause for some concern, but it does not make the individual an "anonymous tipster" under the applicable law. An individual who is willing to provide his name, address, and phone number to law enforcement, even if

8

he wishes the information to be kept confidential, stands in entirely different shoes from an individual who is no more than a voice on the phone. While the identified, but wary, informant may not stand in quite as strong a position as a person who is willing to come forward publicly, he is far different from a totally anonymous caller, and the magistrate was entitled to take note of this fact in weighing the sufficiency of the affidavit.

Relatedly, Defendant argues that the police's failure to track down the informant and meet him or her in person undermines the informant's credibility. Defendant suggests that, although police confirmed through phone records that the address and telephone number matched up, the informant could conceivably have provided the false contact information of a friend, relative, or complete stranger. Moreover, the affidavit does not state that Officer Henn traced the call itself to the address provided.

Clearly, then, this case does not fit neatly into either of the two traditional categories of informants identified by the Supreme Court. It does not involve "an 'unknown caller' who phoned from an 'unknown location' and

9

offered no indication of the basis for the information provided," nor does it involve "'a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated.'" United States v. Romain, 393 F.3d 63, 73 (1st Cir. 2004) (quoting Florida v. J.L., 529 U.S. 266, 270 (2000)).

In this situation, prudence demands that the court engage in the established analysis for assessing probable cause without the benefit of either of these two guideposts -- that is, the court must weigh the informant's veracity, reliability, and basis of knowledge, and ultimately arrive at a conclusion based on the totality of the circumstances. See White, 496 U.S. at 329; Strother, 318 F.3d at 67.

As to veracity, the informant provided several pieces of information that police corroborated before obtaining the search warrant. First, the informant stated that Defendant allowed Trumble to operate a green 2003 BMW "5 series" with a Massachusetts license plate, number 477BXO, which he drove between Springfield and 455 Mill Valley Road, Belchertown. Police observed a BMW exactly matching the informant's description parked at 455 Mill Valley Road and later

10

observed Trumble outside a Springfield residence where the BMW was parked in the driveway.[1]  Second, the informant noted that Defendant's lucrative operation allowed him recently to buy three Toyota automobiles, purchases that the police corroborated.  Defendant asserts that he in fact bought the cars on credit and, therefore, the purchase conveys no relevant information about his available cash.  While this fact may lessen the significance of this information, it does not substantially undermine its corroborative force.  Defendant bought the cars, and the informant knew it.  Third, the informant advised the police to check the electricity usage at 455 Mill Valley Road, stating that it would be unusually high, which police later confirmed.

These three statements, all corroborated by independent police investigation, powerfully supported the named

---

[1] Although Defendant emphasizes that the officer never saw Trumble actually driving the BMW, only standing near it, this fact carries little weight in assessing probable cause. In addition, Defendant's argument that he is entitled to an evidentiary hearing to determine if the police would have had to trespass on his property to view the BMW at 455 Mill Valley Road is unavailing because, even without this information, the affidavit is more than sufficient to support probable cause.

informant's veracity. Defendant does not point to any statements made by the informant that later proved false.

As to reliability, as noted above, the informant's provision of contact information bolstered his or her reliability over that of a truly anonymous tipster, even though the lack of in-person contact admittedly did somewhat detract from it. See Romain, 393 F.3d at 73-74 (explaining why in-person communication greatly enhances an informant's reliability). Here, it was especially significant that the informant called the Belchertown police a second time to offer new and corroborated information, thus providing another substantial reason for the police to consider him or her reliable, despite the informant's concerns about confidentiality.

Finally, as to the informant's basis of knowledge, the only statement contained in the affidavit that clearly rested on the informant's first-hand knowledge is the statement that he or she "personally observed" Trumble transporting "pillow cases of marijuana" while in the Springfield area. (Dkt. No. 41, Ex. A, Wilcox Aff. at ¶ 4.) Despite being the lone statement explicitly premised on the

informant's personal observation, this comment revealed key information that related to the core of the drug operation.

In sum, the informant provided several specific pieces of information corroborated by independent police investigation, offered his or her name and contact information, called back a second time with new information, and stated that he or she personally observed a key player transporting large amounts of marijuana.  Moreover, in addition to the informant's reports, Sergeant Wilcox included in his affidavit Cheryl Balkus's observations of possible tampering with Defendant's electric meter, conclusions by two DEA agents that Defendant's electric usage was consistent with a drug operation, and a rendition of Trumble's extensive drug-related criminal history.  (Dkt. No. 41, Ex. A, Wilcox Aff. at ¶¶ 10, 11, 14, 6.)  Based on the totality of the circumstances, this court is convinced that Sergeant Wilcox's affidavit contained more than adequate probable cause to justify issuance of a search warrant.[2]

---

[2] Given the court's ruling, it is unnecessary to address the government's argument that <u>United States v. Leon</u>, 468 U.S. 897 (1984), bars suppression of the evidence

B. <u>Motion for a Franks Hearing</u>.

Defendant also argues that the affidavit contained misleading statements and, accordingly, moves for a hearing pursuant to <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

To obtain a <u>Franks</u> hearing, a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause." <u>United States v. Cartagena</u>, 593 F.3d 104, 112 (1st Cir. 2010) (quoting <u>Franks</u>, 438 U.S. at 155-56). To prove reckless disregard for the truth, a defendant must prove that the affiant "in fact entertained serious doubts as to the truth" of the allegations. <u>United States v. Ranney</u>, 298 F.3d 74, 78 (1st Cir. 2002) (quoting <u>United States v. Williams</u>, 737 F.2d 594, 602 (7th Cir. 1984)).

Defendant alleges that the affiant, Sergeant Wilcox, misled the state magistrate in several ways. First, Defendant alleges that the affiant "had an obligation to

---

because the officers acted in good faith.

inform the issuing authority in clear and unambiguous terms about the source's lack of first-hand knowledge." (Dkt. No. 40, Def.'s Mem. at 12.)  In fact, as noted above, the only time the affiant mentioned that the informant had first-hand knowledge of the information provided was with respect to the observation of Trumble transporting "pillow cases" of marijuana.  (Dkt. No. 41, Ex. A, Wilcox Aff. at ¶ 3.) Notwithstanding Defendant's intimations to the contrary, the affiant's failure to begin every other statement with the disclaimer "the source lacks first-hand knowledge of the following . . ." does not constitute a reckless disregard for the truth.  The inference that, beyond the pillow cases of drugs, the informant was offering no other personal knowledge is manifest.

Defendant also argues that the affidavit contained a suggestion that Defendant purchased the Toyota automobiles with cash, which, he states, is "patently untrue."  (Dkt. No. 40, Def.'s Mem. at 13.)  However, nothing in the affidavit refers to Defendant's payment method.  Moreover, the fact that the informant had extensive, accurate, and corroborated information about Defendant's recent purchases

15

of late-model automobiles, whether for cash or on credit, is powerful support for the probable cause finding.

Finally, Defendant contends that Sergeant Wilcox intentionally misled the magistrate when he included in his affidavit a comparison of electricity consumption on Defendant's property to two neighboring properties. Specifically, Defendant suggests that Sergeant Wilcox should have included in this comparison a statement explaining that Defendant's property contained a heated swimming pool and exterior lights, which the other properties lacked. (See Dkt. No 39, Ex. 1, Def.'s Aff. at 2.)

This omission does not support a claim for a Franks hearing. Defendant's property attracted an electric bill of approximately $900 per month for the preceding six months. The two neighboring properties averaged less than $200 per month over the same period of time. The notion that a heated pool and exterior lights could account for this enormous disparity in electrical use strains the court's imagination. This is especially true given the time of year (winter) and the fact that records show Defendant used propane gas to heat his house. Thus, Defendant has failed

to make a substantial preliminary showing that Sergeant Wilcox either intentionally or recklessly misled the magistrate in this regard.

C.  Search by Cheryl Balkus.

Defendant further argues that because Sergeant Wilcox requested that National Grid employee Cheryl Balkus view Defendant's electric meter to determine whether it had been altered, her observations amounted to government action, requiring her to obtain a warrant before entering the property.  Given the fact-dependent nature of this inquiry, the court will schedule an evidentiary hearing on this issue.  See United States v. Pervaz, 118 F.3d 1, 6 (1st Cir. 1997) (eschewing the application of a single standard in weighing whether a private party acted as a government agent and instead requiring district courts to consider a number of factors, such as "the extent of the government's role in instigating or participating in the search, its intent and the degree of control it exercises over the search and the private party, and the extent to which the private party aims primarily to help the government or to serve its own

17

interests").

D.  <u>Voluntariness of the Inculpatory Statements</u>.

Finally, Defendant asks the court to suppress his inculpatory statements because he did not waive his <u>Miranda</u> rights.  Because this issue also involves a factual dispute, the court will schedule an evidentiary hearing on this matter as well.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Suppress (Dkt. No. 39) is hereby DENIED IN PART.  The affidavit contained the requisite probable cause to support issuance of the search warrant, and Defendant has failed to make the substantial preliminary showing necessary to warrant a <u>Franks</u> hearing.  The clerk is ordered to schedule an evidentiary hearing that will require approximately two hours on the two remaining issues.

It is So Ordered.

                                      <u>/s/ Michael A. Ponsor</u>
                                      MICHAEL A. PONSOR
                                      U. S. District Judge